The next case today is Benjamin I. Efreom v. Daniel J. McKee, Appeal Number 21-1382. Attorney West, please introduce yourself for the record and proceed with your argument. May it please the Court, Your Honor, I represent Benjamin Efreom and other pensioners who I know are eagerly listening on this Court's YouTube station today, in the matter of trying to have reversed the decision to dismiss their case in the District Court. The reason that we primarily, or first off, think there is support for that is the District Court's own finding that this group of plaintiffs, who are a contingent of a former state group known as the Clifford Group, this group did not vote in favor of settling their claims with the state in the pension actions there. They have absolutely persisted in trying to make that point clear to, in state court, to both the Superior and the Supreme Court. At no point in time, to my knowledge, has that claim been adjudicated by the Superior Court or the Supreme Court on the point of why they were not allowed to opt out as the Cranston Actives Fire and Police were allowed to opt out. There's no question that there was an opt-out feature, Your Honors, because it's clear in the record, right from a Supreme Court Justice retired Williams acting as Special Master's report, that one group was not in favor and would not be joining the class action. Now, Mr. West, you may say that your clients were not in favor, but you can't say they were not joining the class action. They were clearly within the definition of the class certified by Judge Cotter. And it was that class determination, among other determinations, that was affirmed by the Rhode Island Supreme Court. So when Judge Smith says that these claims are barred by a variety of doctrines, including Rooker-Feldman and race judicata, I'm curious as to why that isn't the correct disposition. Your Honor, in the first instance, you're correct in what you say, that a class was formed and that this contingent, the Ephraim group, as I've named them, was included in that class. But we say what's wrongly so, and that point was tried to be made. But that's the point of Rooker-Feldman, isn't it? That once a state court has adjudicated a matter, and the state court rejected all the objections to the proposed class, went on and certified it, and entered a final judgment in the case, under Rooker-Feldman, we can't take any action that would impugn or require revisiting that state court judgment. Your Honor, state court losers can't relitigate the federal court, Rooker-Feldman, black letter law, I understand that. But the point I'm trying to make is, a fundamental due process breach happened where they were denied the same relief as the Cranston firefighters were to press their own claims in the absence. And it's clear that an exception was made for Cranston, and it was denied to Ephraim, and that's a due process violation. Yeah, but the point is, either that argument was made and then rejected by the Rhode Island Supreme Court, in which case you have a Rooker-Feldman problem, or that argument was not made when it could have been, in which case you have a race judicata problem. I don't understand how you can get out from the horns of that dilemma. The way I've thought about it, the way I've argued it, is this way. That happened. There's no question that that happened. It was raised in the hearing, at the fairness hearing, it was raised that the vote was wrong. I've put in my footnotes a colloquy of all that going back and forth. I don't think the state has any dissent from the reiteration of that there. May I reserve two minutes for a moment? And the point I'm trying to raise is that that issue was not squarely addressed by the Superior Court. And it walked around it, and I say the Supreme Court also walked around it, and resolved it all on the basis of, well, the class action ruling was made. But it was made in violation of promises made to these plaintiffs. Mr. West, the race judicata and Rooker-Feldman both bar the relitigation, not only of issues that were actually litigated in the prior case, but of issues that were raised and not addressed, or that were not even raised, but could have been litigated in that case. There's no requirement, once you raise an issue in the state case, that the state court actually decide that issue precisely in order for race judicata to attach, or for Rooker-Feldman to attach. That's what your problem is here. You have a sympathetic case, and you're trying very hard to represent your clients. We understand that. But you're facing a doctrine that's very difficult to overcome. Well, no one's more aware of that than I am, Your Honor. Here's the situation. I think that it's an overstatement to say that there's no relief in federal court when a specific constitutional right due process is denied in another jurisdiction. That's the whole purpose of having a state and federal constitution. And why cannot these plaintiffs be heard on the issue? We were treated differently, and nobody has adjudicated that issue. In my opinion, I think it's been sidestepped. But if I moved on to the next reason why I don't think race judicata would apply, I would look at the application of this law, and I would say— Well, can I just go back for one second? Is it—I mean, I suppose there's an argument, I don't know if it's made, that the due process violation you're complaining of is the— and that wouldn't have even been a claim that could have been raised until the state court proceedings were final, which is that the state court simply never provided you a form to raise this issue because it refused to provide a means for it being addressed. Is that the idea? That's essentially what I'm saying, Your Honor. There was a train moving out of the station. Was that form of the argument presented below, in the sense that it's kind of the way the state court process played out, that there was simply no means of having the state courts because they refused to consider such a question, and so therefore Rooker-Feldman's no bar to it? I mean, we certainly made the argument I'm making to you today that at every turn this argument was rejected. Well, rejected is a problem for you. Well, I don't say rejected, Your Honor. You just said rejected. I misspoke. What I'm trying to say is not addressed. Mr. West, arguments are rejected by courts all the time without addressing them, and we have lots of law, as does the U.S. Supreme Court, that we can take a decision in a case and treat that decision as rejecting all arguments raised even though those arguments weren't specifically addressed. If you do that, Your Honor, respectfully, then you're allowing a whole subset of plaintiffs, the Cranston activists, to be treated differently from this subset of plaintiffs, the retirees, the ephraims, and you're creating a different set of rights. Now, I don't know of any case law that supports that notion that one kind of group that's better than the other. Mr. West, let me ask it this way. You tell me. I suppose the idea would be if a state court has a system where you have to be part of the class. They let some people out. Other people are not allowed out. People that are not allowed out say, well, that's not fair. I want to be heard. And the state court says, we don't entertain such questions. And I say, well, that violates due process, and the state court says, we don't entertain that question. Just we don't consider it. I take it you might say at that point, at the end of that state court process, if it's clear that the state court is simply not going to consider a due process challenge to it, that maybe you could say, well, Rooker-Feldman can't be a bar in that situation. But it's not evident that that is the situation here. Well, if you look at what happens, Your Honor, you know clear things happen just from the record. First of all, you know, Kremsen activists got out. They were exempted from this section of the class action civil procedure rule that doesn't allow anyone out. The selected rule does not allow anyone to escape. And they were allowed to escape. So right there is a process that's flawed and treated one group of clients differently. But let me try to be more specific on your question. Excuse me, but before you be more specific, what do you mean they were allowed to escape? I thought that the way the state court defined the class, the firefighters, for example, weren't included. I thought it was a question of class definition. Am I wrong about that? I don't know the distinction you're making. I'm telling you that they were not included in the class. Yeah, because of the way the class was defined. Well, the class was defined to capture people similarly situated to them. But they were opted out because they did not approve. And, you know, there's no question. You say opted out. I mean, that's a term of art. All right. Opting out of a class. I think there is a legal distinction between not being included within the definition of a class and being allowed to opt out of a class. And I thought it was the former that we're dealing with, not the latter. It's not an opt out, Judge. And you're right to call me on my words. But I'm trying to tell you that a rose by any other name might smell as sweet because they did not have to participate, let us put it that way, in a class that they otherwise would have had to participate in because of who and what they were. So, therefore, they are being granted this right to pursue their own remedies, which were denied to the Ephraims. And the Ephraims would have been able to pursue their claim against the 2011 law if they were allowed the same status and the same opportunity. And we say that treating people differently like that is a violation of the due process rights. They should have had the same rights as those other folks did, and they didn't get it. So, that claim is out there, and I've done my best to explain it. I think it does get us far enough fulfillment. That's time. Can I add just one other? This is a smaller point, but just so I follow it. On count five, if I understand it, the defendants did not make a race judicata argument. The district courts seem to rely on Rooker-Feldman, which doesn't seem obviously correct to me, given that the nature of the challenge there is to the ongoing effect of the state court judgment in chilling First Amendment activity. But I'm not understanding how that claim is a live claim rather than a moot claim, given that you're not seeking damages for that chill. And as I understand it, whatever chill occurred is over, given the consequence of the legislation having been enacted and then the restriction on lobbying being over. So, why isn't that part of the claim moot? The First Amendment violation, I'm trying to remember the exact phraseology of that section of the settlement agreement, but I don't think it ended, and I do think it set up a language that… What are you currently barred from doing that the First Amendment entitles you to do? I think we're not supposed to go to the legislature and argue to change the law back to the way it was or sweeten the deal for retired employees under the terms of the settlement agreement. I think the settlement agreement, as it's written, would be enforced against that. That's my thought. That's why they have a settlement agreement. Even to this day? I would say that that's the purpose of the settlement agreement. It wasn't just a restriction on you doing it during that interim period until the… There's all kinds of… If you read the initial part of the settlement agreement, there's undertakings and commitments by both sides not to interfere with the outcome of the settlement agreement, which is the 2015 legislation. So, I don't think the answer is as clear as your question might have put it. At least it isn't to me. You get all the relief you need if the settlement agreement is construed not to impose any obligation. That's not what Judge Smith said, I don't think. But yes, I would say that if the plaintiffs can now approach the seat of government and argue for increased benefits politically, then that section of the harm has been dealt with. But that doesn't take away the harm that occurred. Yeah, but the harm that occurred, you're not seeking damages, so there's no live dispute. Not on that claim. The way I read your prayer for relief, you wanted a preparatory judgment on that. But you seem to only be seeking damages for the contract breach, not for the First Amendment claim. Well, the way I thought about it in my mind is that damages have to be paid to the plaintiffs, either under the claims in the alternative counts, and for their lost opportunity to go to the legislator and say, no, this is a terrible law that should not be passed. You have other means to do this. Maybe I misread the prayer for relief, but I didn't see the preparatory judgment. I didn't see a request for damages on that aspect of the claim. I thought the addendum was written broadly, but that's my thought. If my claim was still pending down there and that was raised, I'd definitely amend that to make it more clear. But I don't think I was given that opportunity. So I know I've gone over. I have lots more to say, but I'll stop there. Thank you. Attorney West, please mute your audio and video at this time. And your video as well, too, Mr. West. Thank you. And Attorney Benjamin, please introduce yourself on the record to begin. Good afternoon, and may it please the court. Nicole Benjamin, on behalf of the appellees, Governor Daniel J. McKee, the Employees Retirement System of Rhode Island, and Seth Magaziner, in his capacity as chairperson of the Retirement Board. And I'd like to work in reverse order and address the questions that were raised at the end of Attorney West's argument with respect to count five. This is the count regarding the First Amendment. The prayer for relief is a prayer for relief, asking for a declaration with respect to that count. It is correct that that covenant in the settlement agreement was limited in time. This is at page 111 of the appellant's appendix, and it says here that the covenants apply with the exception of covenants C and D, which is not what we're talking about here, that they will apply from the date hereof, including the final approval of the settlement and the enactment of the legislation. So for a brief period of time, that did apply. So just to be clear, your position is that if Mr. West's clients wanted to lobby the legislature now to change things, there's no restriction on them doing that? There is no restriction in the settlement agreement on them doing that. That's correct. And I'd also argue that the Rooker-Feldman Doctrine does still apply to that fifth count. But it's mooted out if it's what you say. That's correct, Your Honor. And if for some reason it wasn't mooted out, I can point the court to a decision. It's the Sutton decision from the District of New Jersey in 1990, where a First Amendment claim related to a consent decree and orders enforcing a settlement were deemed barred by the Rooker-Feldman Doctrine. But how could that be true if it's an ongoing harm that's only imposed by the order itself? I think the court looks at it to say whether at the time, not whether it's an ongoing harm, but whether at the time. Why would that be the right way to look at it? They're not a state court loser as to the ongoing chill because there is no way they could have complained about the ongoing chill at the time of the state court decision. Well, I think at least what the court did in the District of New Jersey case is to look at it at the time of the settlement and at the time of the court's approval of the settlement to determine whether that restriction would be prohibitive. But I agree with Your Honor that the issue is moot given the passage of time. I would like to turn back to the issue of procedurally what happened here with the vote. There were a number of different groups at issue in the Superior Court. As the court is aware, the Clifford plaintiffs, the group that is before the court today, was one of those groups. And what those various groups did is they conducted a vote. So various unions conducted votes, various associations of retirees conducted votes, and a number of those groups came forward and filed a class action lawsuit for settlement purposes only, arguing that their groups had approved a settlement. The Clifford plaintiffs, and the court notes this, this is in Judge Taft-Carter's decision coming out of the fairness hearing, she notes that the Clifford plaintiffs, a substantial majority of them, did support the proposed settlement. Now, I understand that those who are before the court today did not support the settlement, but that's what led to the court's ultimate certification process. And I agree with the comments made earlier that there is a specific meaning in the law about what it means to opt out of a class action settlement. There was no opt-out provided for once the court certified the classes. So there isn't a concern about including the Clifford plaintiffs in the class because they were included in the class as Judge Taft-Carter determined they should have been. And there was no issue with respect to the vote. The other issue I'd like to address is just the issue of due process. So the argument was made that the due process claim was not fully adjudicated or was overlooked in some respect by the court. And I'd like to point the court to, again, Judge Taft-Carter's decision, which specifically addresses the arguments that were made by the Clifford plaintiffs and also responds to them. And what Judge Taft-Carter says is that the Clifford plaintiffs made several arguments before her in the fairness hearing, and specifically she says others expressed their objections to the 2015 settlement agreement's voting process, which did not give the vast majority of the class members any opportunity to vote. These objectors also contested the fact that they were being forced into the plaintiff class against their will since they had no opportunity to opt out. So, again, that issue was raised before the Superior Court. It was addressed by the Superior Court in the court's decision. So there is not, again, a reason to raise it on a second-level review before this court. That's precisely what Rooker-Feldman prohibits. That's precisely what the race judicata doctrine also prohibits. Can I just play that out a step so I understand it? If I make a federal due process claim to a state court saying, you know, you're forcing me into a settlement and you're not giving me any chance to get out of it, even though I look around and very similarly situated people are not being forced to be bound by it, and the state court says, I'm not going to consider your federal constitutional claim, I'm only going to consider your state law claims, and suppose the state court says that all the way up through. Does Rooker-Feldman then bar you from bringing the federal claim in federal court? I think that Rooker-Feldman would still say that if somebody has been aggrieved of that, that the appropriate protocol would be a petition for writ of cert to the United States Supreme Court, not a subsequent suit in federal court alleging that same violation. But regardless, that's not what happened here. There was not a federal due process challenge made in the state court in this case. There were arguments made about due process, which the court addressed in the fairness decision, and I also want to note that as part of the fairness hearing proceeding, the court had a very thorough fairness hearing in which all of the Clifford plaintiffs, including all of those who are before the court in this appeal, were invited to participate. A number of them actually did participate. Twenty-nine of them sent letters to the court that were received in evidence during that fairness hearing. Five of them actually spoke at that fairness hearing. One actually cross-examined some witnesses, and four testified against the settlement. So your suggestion was that the federal due process right to opt out in light of the fact that others were not included in the class, that was not raised instead. So the real problem then is race judicata, in your view, more than Richard Feldman with respect to that claim. That's correct. We did lead with the race judicata argument. So our position is that all of the relief that the plaintiffs are seeking here is relief that they were aggrieved of the 2012 RRSA legislation, that's the Rhode Island Retirement Security Act that was addressed fully in the fairness hearing, and to the extent that they are arguing that their claims, which I think are very clear that that is what they are challenging, but they have argued that they are in fact challenging the 2015 amendments, which were the vehicle by which they were afforded the benefits of the settlement. To the extent that they are making that argument, we have argued that they do not have an injury in fact, and therefore lack standing, and also that race judicata, even if they somehow had, I'm sorry, that the Rupert Feldman doctrine, even if they somehow had standing, would kick in at that point and say that they cannot challenge a state court's endorsement of their settlement. So those are the bases that we've articulated. The other point I wanted to come back to was on due process and to point the court to the Third Circuit's decision in In Re Diet Drugs. This was briefed extensively both before the district court and in our papers before this court, and in that case, the court said that class members are not entitled to unlimited attacks on a class settlement. Once a court has decided that due process protections did occur for a particular class member or group of class members, that issue may not be re-litigated. So similar to the point I was making earlier, that due process argument was made before the superior court and is not properly before this court on appeal. Unless there are further questions, I would rest on our papers. Thank you. Thank you. Attorney Benjamin, please mute your audio and video at this time. Attorney West, you can unmute your device and you have two minutes of rebuttal. Please introduce yourself on the record again to begin. Thank you again, Your Honor. George West for Benjamin Ephraim and others. Your Honor, I want to use what little time I have just to note my theory is that this law presents in itself a new right of claim in the discretion that's been retained by these defendants to continually defeat the 80% funding. And I'm pointing to Judge Patin's case just because I think it's a sharp pointer for why laws survive. I argue women's health, whole world women's health as well. But Judge Patin said in Russo v. Baxter that we as plaintiffs are not supposed to be clairvoyant as to all the claims that could have been raised in the original filing. Certainly, my plaintiffs could not have run an attack on the 2015 law because it didn't exist. And once it did exist, its application to them is continuing to cause them constitutional harm. Defendants retained the power and simultaneously with the enactment of the 2015 Offensive Pension Reform Act, there was a concomitant striking from the law of the obligation of the state to dedicate its surplus reserve revenue from the budget to the retirement system. That was struck, and I note that in my briefing, from the requirement. So it's like the promise to fund that out of excess revenues was taken away. Now, that's not part of the settlement agreement in my reckoning. And that creates in itself a separate right of action that they are being deprived of this benefit, the COLA benefit, when you've got a state that's got $1,600 million in revenue surplus this year. They could have paid for the whole thing just out of that surplus this year available to them. And they also have... Thank you. Thank you for hearing me. That concludes argument in this case. Attorney West and Attorney Benjamin, you should disconnect from the hearing at this time.